# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,                       Criminal No. 09-117(1) MJD/AJB

           Plaintiff,

v.                                **REPORT AND RECOMMENDATION**

Ion Datcu

           Defendant.

       Lisa Kirkpatrick, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

       Gary R. Wolf, Esq., for defendant Ion Datcu.

This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on June 26, 2009, at the U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101. The court issued an Order on Motions dated June 29, 2009, reserving defendant Ion Datcu's motion to suppress search and seizure evidence for submission to the District Court on report and recommendation.

Based upon the file and documents contained therein, along with testimony and exhibits received at hearing, and the memoranda and arguments of counsel, the Magistrate Judge makes the following:

**Findings**

Maplewood Police Officer Paul Bartz was on patrol in the vicinity of the Maplewood Mall at about 6:00 p.m. on March 15, 2009, when he received a dispatch report of suspicious activity taking place in an area in which two banks are located just east of the mall.

The officer was alone in a marked police cruiser. The report was made by a caller who indicated that two persons were observed in the area between a Bremer Bank and a TCF Bank, in the 2900 Block of White Bear Avenue. The banks were not open for business. The caller was concerned that the individuals were attempting to break into bank night deposit boxes. The suspicious individuals were described as white males, one of whom was wearing blue jeans and the other wearing all black clothing. The caller also noted that there was a black, four-door SUV parked nearby.

Officer Bartz promptly responded to the report, and by driving across mall property, he arrived at the subject scene within two minutes of the dispatch. He drove directly to a black SUV, with California plates, that was parked alongside a dumpster enclosure located in the northeast corner of the Bremer Bank parking lot. (Hrg. Ex. 1, aerial photograph). The police vehicle emergency lights were not activated. The SUV, a Ford Edge, was backed up to a curbed grass median that separated the Bremer and TCF parking lots. The officer stopped his squad car at an angle within a few feet in front of the Ford Edge, in such a way that the SUV could not be driven around the squad car except by making multiple steering maneuvers. As he arrived at the scene, Officer Bartz observed defendant Ion Datcu on the other side of the median, walking from the east side of the TCF Bank and coming southbound towards the Bremer Bank. Another man, co-defendant Stelian Cipu, was observed in the passenger seat of the SUV. When the officer drove up, Mr. Cipu immediately got out of the Ford Edge and began walking in the direction of the mall. Also, Mr. Datcu suddenly changed course to go to the west, in the direction of the Maplewood Mall. The men generally matched the description provided in the dispatch. The officer yelled to both of the men to stop and come back. Mr. Cipu promptly stopped and

2

returned, while Mr. Datcu came to the officer after a second order. Thereafter, the men were not free to leave, pending investigation. The defendants were instructed to put their hands on the police vehicle, but Officer Bartz did not draw his firearm and the men were not put under arrest.

Meanwhile, Officer Bartz was aware that additional officers were en route to the location. Therefore, he stood near the passenger side of the SUV, and conversed with the two individuals while awaiting the arrival of the backup officers. Within a few minutes, Maplewood Officers Markese Benjamin and William Sypniewski arrived in separate squad cars and parked side by side, approximately one car length to the west of the Ford Edge. Officer Bartz then walked Mr. Datcu to the back of his squad car while Mr. Cipu remained near the SUV with the other officers. The groups were separated by a distance of approximately two car lengths; the defendants were not handcuffed or arrested at that time, and no weapons were drawn by officers.

When Officer Bartz asked him for identification, Mr. Datcu provided his correct name and stated that his wallet was inside the Ford Edge. The officer thereafter conducted a pat search of Mr. Datcu. Bartz did not find a weapon in the pat search, but he did detect a credit card sized object which he removed from the defendant's pocket. The item was indeed a credit card which had been issued in the name of a third party. In the meantime, officers made a vehicle registration check which indicated that the SUV was a rental unit. When asked who owned the car, Mr. Datcu stated that he had rented the vehicle. Officer Bartz thereafter proceeded to conduct a search of the Ford Edge.[1] Numerous items were discovered in the center

---

[1] Officer Bartz testified that he asked Mr. Datcu for consent to remove the card from his pocket and for consent to search the vehicle, and that such consent was given in each instance and was never withdrawn. Defendant Datcu testified that consent was expressly denied in each respect. Although the court's decision here does not rest on a credibility determination regarding this issue, the court having heard the evidence, determines that consent was not given.

console, including a wallet containing several Visa gift cards and credit cards in the names of persons other than the defendants, along with approximately $2,500 cash and an activated radar detector.[2] Further search of the vehicle resulted in discovery of a black bag containing a wig, additional credit cards in other names, and possible theft tools. Officer Bartz then instructed the other officers to arrest Mr. Datcu and Mr. Cipu for possession of burglary tools and to place them in handcuffs. Prior to the vehicle search and the formal arrests, Mr. Cipu had also been pat searched by Officer Benjamin, resulting in the recovery of a screwdriver and a chisel, as well as a wallet containing a credit card belonging to a different person. After the arrests, Mr. Cipu was placed in Officer Sypniewski's custody for transport and Mr. Datcu was placed in Officer Benjamin's custody for transport to the Ramsey County Jail. Both defendants were again searched before being placed in the police cruisers. Officer Bartz also called for a tow upon determining that the Ford Edge should be impounded because it was a rental vehicle and was a possible search warrant target. He resumed his search of the car as a required inventory search pursuant to Maplewood Police Department policy regarding impounded vehicles. At this time he found a hotel room key and a receipt from the Emerald Inn Hotel in Maplewood in the SUV. In addition, a canine officer was called and a drug sniff of the Ford Edge was performed, though no direct evidence of drug use, possession, or transportation was revealed.

Upon driving defendant Datcu away from the place of the arrest, Officer Benjamin drove west across an access road and into the mall parking area and parked for approximately one-half hour at a location from which the defendant could not see the black

---

[2] Officer Bratz testified that radar detectors are often used by criminals to alert them to the presence of police in the area.

4

SUV. During some of this time Officer Benjamin was talking on the radio and was checking Mr. Datcu's criminal record in Washington State.[3] After this diversion Officer Benjamin drove onto White Bear Avenue, and proceeded to the Ramsey County Jail for booking. When he drove by the arrest site Officer Benjamin did not stop, though the defendant was able to observe an additional vehicle, and an officer with a police dog, at the scene.

**Room and Vehicle Search Warrant.** On March 16, 2009, Ramsey County District Court Judge John A. Guthmann issued a warrant to search a particularly identified hotel room in Maplewood, Minnesota, and a particularly described Ford Edge vehicle. (Hrg. Ex. 2). The supporting affidavit further states Mr. Datcu was the sole renter of the Ford Edge and was named on a rental agreement for the hotel room. The search warrant identified the objects of the warrant as cash, financial and credit documents evidencing criminal offenses, credit cards and identifications in names other than Ion Datcu or Cipu Stelian, computers and electronic data storage devices, and tools and materials used to create fraudulent identifications. The warrant was issued on the basis of probable cause contained in the Affidavit of Investigator Paul Theisen, including evidence obtained by search and seizure and police observation.

**Computer Search Warrant.** On March 26, 2009, Ramsey County District Court Judge Marybeth Dorn issued a warrant to search a particularly described Toshiba laptop computer, as well as a magnetic strip reader, a portable credit card scanner, and a portable memory stick, located in Maplewood, Minnesota. (Hrg. Ex. 3). The supporting affidavit states that the laptop computer and other items to be searched were seized in the execution of the

---

[3] Mr. Datcu has a prior federal conviction for credit card fraud for which he served time in prison. (Hrg. Tr. 83).

warrant to search a hotel room on March 16, 2009. The search warrant identified the objects of the warrant as documents and correspondence, in names other than Ion Datcu or Stelian Cipu, from banks, credit card companies and other financial institutions, and evidencing criminal offenses; all data on hard drives and removable media, including existing and deleted files; and data on storage devices that could be used to copy or create counterfeit or altered checks, identification cards, credit cards, and debit cards. The warrant was issued on the basis of probable cause contained in the Affidavit of Investigator Paul Theisen, including evidence obtained by search and seizure and police observation, including evidence obtained in the execution of another search warrant.

Based upon the foregoing Findings, the Magistrate Judge makes the following:

**Conclusions**

**Person and Vehicle Searches.** Defendant Ion Datcu and co-defendant Stelian Cipu were lawfully subjected to an investigatory stop and detention based upon reasonable suspicion that they were engaged in criminal activity. Contrary to defendant's assertion that he was unlawfully detained as a result of Officer Bartz' using his police cruiser to block the departure of the Ford Edge, the court concludes that such police action cannot appropriately be construed as detention under circumstances in which the defendant was not an occupant of the vehicle, and the person in the passenger seat promptly abandoned the vehicle on his own volition upon arrival of the officer. However, Officer Bartz readily acknowledged that the defendants were not free to leave the scene after he yelled at them to stop and come to him, and therefore, the defendants were effectively detained at that time. See United States v. Peoples, 925 F.2d 1082, 1085 (8th Cir. 1991).

In evaluating whether an officer had reasonable suspicion, there is no "neat set of legal rules" to follow. United States v. Barker, 437 F.3d 787, 790 (8th Cir. 2006)(citations omitted). Officers' observations are not considered as discrete and disconnected events, but are examined as a whole to determine whether there is a particularized and objective basis to suspect criminal activity under the totality of circumstances. Id. (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)). In the instant case, Officer Bartz had reasonable suspicion of the co-defendant's involvement in criminal activity to justify initiating an investigation under Terry v. Ohio, 392 U.S. 1, 21 (1967), in light of circumstances whereby a witness[4] had reported suspicious activity by two individuals observed in adjacent parking lots for banks that were closed for business;[5] the vehicle reportedly being used by the suspects was in a concealed location behind a dumpster, hidden from a nearby busy street, and away from commercial activity; the descriptions of the suspects and vehicle was wholly consistent with the officer's own observation; defendant Cipu exited the vehicle and began to walk away from an officer whose presence was close and obvious; and defendant Datcu saw the officer drive up to the Ford Edge that he had been walking towards and abruptly changed his course to avoid contact with the officer.[6] United States v. Peoples, 925 F.2d at 1086. The conduct of both suspects could

---

[4] The testimony at hearing did not reveal whether the reporting witness had been identified to the police at the time of the detention, but the witness was at the scene and was available to police immediately following the arrest, if not earlier. (Hrg. Tr. 31).

[5] Despite ATM and night deposit box access that may have been available at either or both banks, considering the reported location of the SUV and the presumable time lapse between the initial report and the arrival of Officer Bartz, the officer could reasonably discount the likelihood that the individuals were merely making an off-hours deposit or a typical ATM transaction, both of which can usually be done quite quickly.

[6] Defendant Datcu testified that he was haphazardly wandering around the lot in search of a garbage can in which to throw the wrappings from some pastry he had obtained at the mall.

reasonably be viewed as an effort to avoid police contact as well as an attempt to distance themselves from the vehicle. Though the officer did not observe criminal activity at the outset, his contact with co-defendants Datcu and Cipu was an appropriate and lawful investigatory action based upon a reasonable suspicion of the co-defendant's immediate involvement in criminal behavior.

In the course of an investigatory stop "officers may take whatever steps are necessary to protect their personal safety"–whether there is an arrest, a search, neither, or both. United States v. Stachowiak, 521 F.3d 852, 855 (8th Cir. 2008)(quoting United States v. Shranklen, 315 F.3d 959, 961 (8th Cir. 2003)). The validity of a Terry search does not rest upon an officer's actual fear that a suspect is dangerous, but rather, whether a hypothetical officer in the same situation could reasonably believe that a suspect is dangerous. United States v. Rowland, 341 F.3d 774, 783 (8th Cir. 2003)(citations omitted)( further noting a split among the circuits regarding the relevance of officer motivation). Moreover, the permissibility of a Terry search extends to a search of a vehicle's interior, even in the absence of an arrest, because of the suspect's potential access to weapons upon re-entry into the vehicle. Id. at 784 (citing Peoples, 925 F.2d at 1087). An officer who has received a report of suspicious activity in the vicinity of two banks, and is further aware of the particular evasive actions taken by defendants in this case, could reasonably suspect that criminal activity involving those banks was afoot, and the suspects presented an immediate danger to the officer. Under these circumstances, the pat searches of

---

He did not testify that he had given that explanation to the officer. To the extent that this particular testimony is credible, it is not exculpatory in the context of circumstances to be considered by an officer who was not given the explanation for apparent evasion, and in any event, it would simply justify increased suspicion with regard to the defendant's decision to park his vehicle in this particular location and walk some distance to the mall to get coffee and pastry.

both defendants was lawful, and the search of the vehicle that was used by the suspects was likewise properly conducted pursuant to a lawful stop of the individuals. United States v. Peoples, 925 F.2d at 1087.

With respect to the vehicle search, the court further concludes that the discovery of a screwdriver, a chisel, and a third-party credit card on the person of co-defendant Cipu, along with all the other existing circumstances, was sufficient to establish probable cause to believe that contraband would be found in the SUV. Where such probable cause to search is present, no exigency beyond the mere mobility of the vehicle is required. United States v. Blaylock, 535 F.3d 922, 926 (8th Cir. 2008)(citing Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485 (1996). The search of the automobile was permissible pursuant to the automobile exception to the Fourth Amendment warrant requirement. Maryland v. Dyson, 527 U.S. 465, 467, 119 S.Ct. 2013 (1999).

Suppression of evidence obtained pursuant to either the pat searches or the vehicle search is not required. Moreover, the evidence discovered and seized as a result of the vehicle search was sufficient to establish probable cause for the arrests of both Datcu and Cipu for possession of burglary tools.

**Inevitable Discovery.** Suppression of evidence obtained in the course of the pre-arrest search of defendant Ion Datcu is not required. A credit card taken from the person of Mr. Datcu subsequent to a lawful Terry search would ultimately have been discovered and seized, either upon post-arrest search prior to transport, or pursuant to policy and practices in connection with booking and admittance into the Ramsey County Jail. The inevitable discovery doctrine may justify the allowance of evidence which might otherwise be subject to suppression if: (1)

there is reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the government was actively pursuing an alternative line of investigation. United States v. Thomas, 524 F.3d 855, 858 (8th Cir. 2008). In the present instance the officers were pursuing contemporaneous investigations with respect to Mr. Cipu and Mr. Datcu, as well as the Ford Edge. The vehicle search is separately justified as a search conducted in connection with co-defendant Cipu's suspected involvement in criminal activity, particularly under circumstances whereby Cipu had been seen getting out of the SUV and had been found in possession of possible burglary tools.[7] The burglary tools and items discovered in the vehicle were lawfully seized, and both defendants were lawfully arrested on the basis of evidence discovered in the SUV. Consequently, the credit card taken from defendant Datcu's person would have been lawfully and inevitably discovered in a search incident to his arrest and/or a booking search, without regard to whether he consented to the initial seizure of the card from his pocket.

**Search Warrants.** Evidence seized pursuant to a warrant to search a particularly identified hotel room in Maplewood, Minnesota, as well as a particularly described Ford Edge vehicle (Hrg Ex. No. 2), and a second warrant to search a particularly described Toshiba laptop computer, a magnetic strip reader, a portable credit card scanner, and a portable memory stick, located in Maplewood, Minnesota (Hrg Ex. No. 3), was not unlawfully obtained in violation of the constitutional rights of defendant Ion Datcu. The hotel room and vehicle search warrant was

---

[7] A screwdriver and a chisel were discovered in the pat search of defendant Cipu. The court acknowledges that there may be numerous reasonable explanations for carrying a screwdriver. However, a chisel is not a common pocket item, and a chisel in combination with a screwdriver, viewed in light of other noteworthy circumstances in this case, justifies a conclusion by officers that the items were indeed burglary tools.

issued on March 16, 2009, and was based upon sufficient probable cause evidence as stated in the Affidavit of Investigator Paul Theisen, and as determined by Ramsey County District Court Judge John A. Guthmann.  The laptop computer and data storage device search warrant was issued on March 26, 2009, and was based upon sufficient evidence to establish probable cause as stated in a separate Affidavit of Investigator Paul Theisen, and as determined by  Ramsey County District Court Judge Marybeth Dorn.  Each of the warrants properly and sufficiently identified the location or subject of the search and the items or information to be seized.  The search warrants in this matter were lawfully issued and there is no requirement for suppression of evidence seized pursuant to either of the warrants.  The court further concludes that the search warrants were not issued on the basis of probable cause evidence that was unlawfully obtained and suppression of evidence seized in the execution of the warrants is not required on grounds that the evidence is fruit of a poisonous tree.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that defendant Ion Datcu's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied**  [Docket No. 60].

Dated:      August 4, 2009

   s/Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made

and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before August 18, 2009.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.